FRYE & Co. *v.* UNITED STATES (No. 3084)[1]

---

[1] T. D. 43078.

United States Court of Customs Appeals, November 19, 1928

*Donworth, Todd & Holman*, and *Wise, Whitney & Parker* (*Byrd D. Wise* of counsel) for appellee.

*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein* and *Oscar Igstaedter*, special attorneys, of counsel), for the United States.

[Oral argument October 5, 1928, by Mr. Wise and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellant filed its petition for remission of certain additional duties under section 489 of the Tariff Act of 1922.

The Customs Court, after a hearing, denied the same, and the appellant brings the matter here, alleging that the court erred in not granting the prayer of the petition and in failing to make a finding of fact such as is contended to be necessary under *United States* v. *Fish*, 268 U. S. 607.

The facts as shown by the record are, briefly, as follows:

Appellant imported four shipments of wheat screenings from Vancouver, B. C., at the port of Seattle, Wash., which were entered separately on December 16, 1924, and January 22, February 4, and January 9, 1925, the entries being numbered respectively 3107, 3677, 3824, and 3463. Entries numbered 3677, 3824, and 3463 were made by H. L. Parsons, a clerk in the employ of appellant, whose duty it was to make customs entries and who worked under the direct supervision of Thomas Henry Cliff Harding, office manager of appellant. The remaining entry was made by George J. Gagnon, manager of the Union Stock Yards, a subsidiary of appellant, and who performed the duties of Parsons when the latter was absent. The final appraised values for the respective entries were $17, $23, $22, and $19.50 a ton.

The testimony further shows that at the times of these importations these screenings are gathered in small quantities from various localities and shipped to a central point, and that the market value thereof, at Vancouver, was fluctuating greatly, sometimes as much as $3 or $4 a ton a day, due to supply and demand.

It appears that Parsons was generally instructed by Harding to disregard, in all cases, the purchase price, and to enter goods at their

market value at the time of exportation. Parsons made entries 3463 and 3677 upon pro forma invoices, not having the consular invoices at the time. Entry 3824 seems to have been made upon a consular invoice. At the respective times these entries were made, Parsons applied to an official in the customhouse, by the name of Jarrett, for information as to the market values of the goods. He was informed there was no information available, but that the goods should be entered at the market value. Parsons thereupon, in each instance, called by telephone W. T. Miller at Vancouver, the person from whom such screenings had been purchased, and inquired the market value of the same on the date of export. On this information being received, the goods were entered according to the values thus given, the importer voluntarily advancing his values from $17 to $18.50 a ton, in entry No. 3824, and $552.39 in entry No. 3463.

Gagnon also made entry. No. 3107 on a pro forma invoice. He had been instructed by Harding to enter all goods at their market value on the date of export. Before making the entry in question, he consulted the said Miller, who happened to be in the Seattle office at the time, and from the information thus received made the entry, adding $1 a ton, to make market value, to the purchase price of $15 a ton.

This is the substance of the record. An attempt was made to show knowledge by Parsons of certain marginal notations of value upon the invoices in entries Nos. 3677 and 3463. It was clearly developed, however, that these invoices had not been in the hands of Parsons before said entries were made, but were in the possession of the customs officers, and that the entries thereon were made by said customs officers.

Upon this record we are of opinion remission should have been granted. It would be a work of supererogation to again cite or dwell upon the various authorities on this subject. We have, on numerous occasions, been called upon to announce our views upon this statute. Many of these authorities were summed up and expressed in *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453, as follows:

Summarized, these adjudged cases announce certain fundamental facts which the petitioner must establish if he is to obtain relief: First, he must show that in undervaluing his goods he was acting in entire good faith; second, that there were no facts or circumstances known to the petitioner when he made his entry which would cause a prudent and reasonable person to question the correctness of the values given by him; third, that he has made to the collector in making his entry, a full and candid disclosure of all the material facts in his possession bearing upon the value of the merchandise imported.

Testing the facts in the case at bar by the rule thus stated, no reason appears why importer has not brought itself within the rule. The facts all affirmatively show that the importer was trying to fully

disclose to the customs officials the truth about the values of his importation, and that no fraud or deceit was intended. In such a case remission should have been granted, and it was error to refuse it. *Randall Co.* v. *United States*, 13 Ct. Cust. Appls. 540, T. D. 41427; *Syndicate Trading Co.* v. *United States*, 13 Ct. Cust. Appls. 409, T. D. 41339. For this reason, the judgment of the court below is *reversed* and the cause *remanded* for further proceedings.