Morris Rosenbloom & Co. *v.* United States (No. 3125) [1]

United States Court of Customs and Patent Appeals, April 2, 1929

*Barnes, McKenna & Halstead (Samuel M. Richardson* of counsel) for appellant. *Charles D. Lawrence,* Assistant Attorney General (*Hugo P. Geisler* and *Oscar Igstaedter,* special attorneys, of counsel), for the United States.

[Oral argument January 31, 1929, by Mr. Richardson and Mr. Igstaedter]

Before Graham, Presiding Judge, and Bland and Hatfield, Associate Judges

Bland, Judge, delivered the opinion of the court:

Morris Rosenbloom & Co., appellant, was the unsuccessful petitioner for the remission of additional duties in the court below. The

[1] T. D. 43336.

petitioner was not the importer of the goods, nor was petitioner in any way connected with the importer, either before or after importation, and to that extent this case is different from all other cases of remission, involving the Tariff Act of 1922, which have been before this court.

Bloom & Co., of Switzerland, manufacturers of watch movements, sold, between May and August, 1924, to Thelma Watches (Inc.), of New York City, several shipments of watches, watch movements, etc. The merchandise was shipped to the port of New York to Thelma Watches (Inc.), which company went into bankruptcy without having made entry of the merchandise.

In February, 1925, appellant purchased from the Swiss manufacturer the merchandise which was in the United States customhouse, and on March 2, 1925, made entry of the same at the port of Rochester, N. Y., at a value 25 per centum less than the consular invoice value to Thelma Watches (Inc.). The appellant received invoices for the goods from the Swiss shipper, which showed that they were sold to appellant at 25 per centum less than the price made originally to Thelma Watches (Inc.).

The 25 per centum reduction was made because it was a job lot or close-out sale and the watches were marked "Thelma" on the dial and on the plates. Appellant sold watches upon which its own name appeared, and the shipment here in question, bearing another name, according to the testimony, did not tend to stimulate appellant's business, was not as readily resalable, and was, therefore, worth less than if unmarked or if bearing the name of appellant.

The only testimony was by appellant's three witnesses—Abe M. Weinberg, partner in the firm of appellant; Fred O. Buchan, entry clerk in the customs service at the port of Rochester; and William Levinson, another partner in the appellant firm. Weinberg signed the petition.

The evidence shows that five or six weeks before the purchase of the watches was made appellant received a letter from the Swiss manufacturers, from whom appellant later purchased the watches, with reference to making a job lot or close-out sale of the merchandise involved herein. The negotiations resulted in the sale at 25 per centum less than the original selling price to Thelma Watches (Inc.). The goods were billed to appellant in seven different lots and shipped in several different shipments. The bills and the invoices clearly showed the price appellant paid for the merchandise. Mr. Weinberg went to the customhouse office for the purpose of ascertaining the value at which he should enter the goods. He talked with the appraiser, Mr. Shaw, who told him to go ahead and enter the goods at the price he had bought them for, which was the price shown on the bills. All invoices and papers were shown to the appraiser. He did

not make any further inquiries as to the market value of the goods since all the facts were fully understood by both appellant and the appraiser and there was no one to make inquiry of except the appraiser.

Mr. Levinson went to the appraiser to talk to him about one of the shipments. That he went to the appraiser is supported by the testimony of Mr. Weinberg and by the entry clerk. Mr. Levinson swore he went to see the appraiser about making entry of the goods and that the appraiser told him to enter the goods at the price paid by appellant to the Swiss manufacturer.

Buchan, the entry clerk, stated that Mr. Levinson came to him with reference to the entry and that Mr: Levinson went to Mr. Shaw upon his advice. Mr. Levinson showed Buchan his consular invoice and his private invoice and "the discrepancy in the prices," and Buchan advised him not to enter the goods until he had taken the matter up with the appraiser, and he took Mr. Levinson to the appraiser. He stated that the appraiser talked with Mr. Levinson about the value but that he did not know what conclusion they arrived at.

Before the goods were appraised Mr. Shaw died. The merchandise was appraised at the price at which it was originally invoiced to Thelma Watches (Inc.). No appeal to reappraisement was taken.

The United States Customs Court denied the petition and in its decision is found the following:

It does not appear, however, that the merchandise was appraised by Mr. Shaw, for the return was not made for nearly two years after the entry. It is altogether too frequent an occurrence in these remission proceedings to put the responsibility on some deceased person, or some one beyond the reach of a subpœna. Not the slightest effort was made to ascertain the dutiable value of the merchandise before entry, except as it is claimed that the deceased appraiser was consulted. It is a fact not disputed that the petitioners were in possession of the consular invoices issued at the time of the exportation of the merchandise from Switzerland, which shows values 25 per centum higher than those at which they were entered.

The evidence submitted in support of the petition is not satisfactory. It neither establishes good faith nor diligence in seeking to ascertain dutiable value before making entry.

Appellant in its assignment of errors and argument here complains of the attitude of the court below in indicating a disbelief of the testimony given by the witnesses for appellant concerning the statements made by the deceased appraiser, Shaw, and calls attention to the fact that none of the justices deciding the case heard the testimony, and that our review of the testimony can in no wise be affected by the rule involving the opportunity of a trial court to judge the credibility of a witness who appears before it.

The court below, not having heard the witnesses, and this court are, obviously, in the same position with reference to their opportunities of observing the demeanor of witnesses on the witness stand.

and in judging their credibility therefrom. It seems to us, under this record, that we must accept the fact as proven that Appraiser Shaw did tell both Weinberg and Levinson to enter the goods at their purchase prices. What weight and effect is to be given to this testimony is one of the things only to be considered in this case.

It is not disputed, and indeed it seems too apparent to admit of doubt, that the proper value at which appellant should have entered its merchandise was the value, as defined by section 402 of the Tariff Act of 1922, of the merchandise *on date of exportation from Switzerland.* The Government contends that evidently the appraising officer found that that value was the value as set out in the invoice made by the Swiss manufacturer to the insolvent company.

Witness Weinberg stated that the goods in 1925, the year of entry, were cheaper than they were in 1924, when purchased by Thelma Watches (Inc.). He also stated that his firm had had experience in entering merchandise and had imported foreign goods on numerous occasions, but that he always imported them himself and entered them at the price he paid.

In *Wolf & Co.* v. *United States,* 13 Ct. Cust. Appls. 589, T. D. 41453 and in a number of other cases this court has held that in order for a petitioner for remission of additional duties, under the Tariff Act of 1922, to be entitled to the relief provided for therein, he must show his entire good faith and must show that there were no facts or circumstances known to him when he made his entry which would cause a reasonable and prudent person to question the correctness of the values given, and that he has made to the collector a full and candid disclosure of all the material facts in his possession bearing upon the merchandise imported.

In *Proctor Co.* v. *United States,* 12 Ct. Cust. Appls. 535, T. D. 40735 and in *Schrikker* v. *United States,* 13 Ct. Cust. Appls. 562, T. D. 41433, this court held, in substance, that one who deals with customs laws, and regulations applicable thereto, is charged with knowledge of them, and that ignorance of such laws and regulations alone would not excuse an undervaluation upon entry. In the *Proctor* case it was held that nothing the examiner could have said would be binding in subsequent proceedings in determining the value of the merchandise and in the discharge of official duty. It will be remembered, however, that this case arose under the Tariff Act of 1913, where manifest clerical error was the sole basis upon which remission might be had.

In *Glendenning & Co.* v. *United States,* 13 Ct. Cust. Appls. 387, T. D. 41320, we said:

We have had occasion in several instances to review the judgments of the Board of General Appraisers in remission cases since the approval of the Tariff

Act of 1922. Each case has presented a state of facts peculiar to itself and it has, therefore, been necessary to dispose of each according to the ultimate conclusion arrived at after a consideration of them. To announce general principles applicable to all such cases is difficult and in some respects impossible but we have said that the issue principally involved in such cases is the good faith and intentions of the importer. *United States* v. *American Metal Co.*, 12 Ct. Cust. Appls. 440.

In *Linen Thread Co.* v. *United States*, 13 Ct. Cust. Appls. 301, T. D. 41220, "satisfactory evidence" was referred to as follows:

Proof of the circumstances and conditions and a full and candid explanation thereof is required. Anything less than that is not sufficient.

As has been said before in this class of cases, each case must stand upon its own bottom, on the question of good faith and intent. In the case before us the entrant and petitioner was not the importer of the goods. Its habit was to enter goods at the price paid. It is obvious that there was no one to whom it could go except the appraiser for any information which would be helpful to it in declaring the dutiable value. Both members of the firm consulted the appraiser and were told to enter at the price paid. It was obvious to the appraiser and to the petitioner that, regardless of the falling market, the watches, on account of the facts heretofore set out, were greatly reduced in value. It is not improbable to assume that the appraiser may have thought that goods of this character, containing the name "Thelma," at the time of shipment, which goods were destined to go to an insolvent company, were, at the time of shipment, worth less than the invoice price. Certainly, Appraiser Shaw concluded that the invoice value to Thelma Watches (Inc.) was higher than the dutiable value, and we can readily understand how reasonable and intelligent men might have entertained such a view. Of course, for the purposes of the case, we must conclude that the final appraised value was correct, and that there was an undervaluation, but the question here is: Has the petitioner shown good faith? Has it shown diligence in ascertaining the facts and otherwise complied with the requirements of the remission statute?

We think the evidence shows good faith and that it affords satisfactory evidence upon which remission should have been granted, and in this view we are supported by this court's decision, the opinion of which was delivered by Judge Smith, in *United States* v. *Frank P. Dow Co., Inc.*, 16 Ct. Cust. Appls. 304, T. D. 42875. In that case cresol was entered at its invoiced value, which was its foreign value and export value. The merchandise was appraised at its American selling price, which was higher. The petition for remission of additional duties and the proof in the hearings of the case showed that the

manager of the importing company was informed by the appraiser that the goods were dutiable at the invoice price. This court there said:

> On the face of his appraisement the appraiser made the following statements in writing: "Adv. 100%. Inv. correct as to price paid. Adv. to make American selling price as noted. No fraud apparent."
>
> The importer was presumed to know the law. But, even if the importer was chargeable with a chemical knowledge of distillates of coal tar and what tar acids they would produce at different temperatures, the fact is he did not know and tried to find out. He went to the appraiser's office, that branch of the customs service which is not only specially charged with the examination of merchandise but has the expert personnel to ascertain the facts and factors which determine classification. He was told by the appraiser that cresol was not free of duty but dutiable at 7½ cents per pound and 40 per centum ad valorem on the invoice value.
>
> We think the importer acted in good faith and that the United States Customs Court was fully warranted in making the finding from which this appeal was taken.

The facts in the case at bar differ in some respects from the facts in the last-cited case. No two cases within our observation have been identical as to the questions of law and fact presented. But the principle involved in the decision of the last-cited case is quite applicable to the case at bar. See also *Frye & Co.* v. *United States,* 16 Ct. Cust. Appls. 325, T. D. 43078.

The burden rests upon the petitioner to make such proof as will show his good faith and lack of fraud and bad intent. If he has made a case which shows his conduct, in connection with the entry and valuation therein, to be entirely out of harmony and inconsistent with the existence of such fraud and bad faith, it should be regarded as satisfactory and sufficient for the purposes of the remedial provision.

In *Schrikker* v. *United States, supra,* where the judgment of the Board of General Appraisers, now the United States Customs Court, was reversed on account of its failure to regard petitioner's evidence as sufficient and where an inexperienced and somewhat ignorant importer made a full disclosure of all the facts in connection with his undervaluation of a shipment of cabbage, this court said:

> The conduct of the petitioner, in this case, is difficult to harmonize with bad faith or fraud. True enough, under the law, in order to justify the board in denying the petition, it is not necessary that it should affirmatively find that the entrant was guilty of fraud, or intent to deceive, *but the facts from which the board draws its conclusions, if the petition is denied, should at least be harmonizable with the possibility or probability of fraud.* (Italics not quoted.)

Under the peculiar facts of this case we think remission should have been granted, and the judgment of the United States Customs Court is, therefore, *reversed* and *remanded* for further proceedings.