BEFORE THE THIRD DIVISION, DECEMBER 15, 1949

**No. 53823.**—S. S. Perry *v.* United States, petition 6623–R (El Paso).

CLINE, Judge: This is a petition for the remission of additional duties accruing under section 489 of the Tariff Act of 1930 due to the undervaluation of merchandise.

The merchandise consisted of baskets and palm manufactures imported from Mexico on July 11, 1945. It was purchased from various dealers, including Salvador C. Musalem, Francisco Romero, and Andres Quinto. It was entered as invoiced and advanced in value by the appraiser.

At the trial Morris Greenblat testified that in 1945 he was a partner in the firm of Samuel S. Perry, the petitioner herein; that Mr. Perry died on February 11, 1946; that the prices on the consular invoice herein represent the prices paid by the firm for the merchandise; that the invoice price for items 101 to 2 purchased from Salvador Musalem is 2.90 pesos; that the appraised value is 3.35 pesos; that the firm had a price list from Mr. Musalem which had been mailed by Mr. Perry when he was in Mexico in December 1944; that the price list was accompanied by a letter from Mr. Perry relating thereto; that he (the witness) instructed the broker, Bailey-Mora Co., to enter the merchandise at the invoice prices although he knew at the time that Musalem had issued a list containing prices different from the purchase prices. The witness was asked why he did not adopt the prices shown on that list and stated:

Well, we found that on the average in doing business with Mexico that the price we paid, as a rule, for this merchandise was more or less the market value; in most instances, at least, the price level had been moving one way, upward, and not downward, and in some instances we even paid the manufacturers higher prices than the prices at which the orders were actually placed. So as these invoices came through we sent them to the various brokers, and had entries made based on the actual invoice price, which was a representation of what we actually paid for the goods.

Q. Yes, but, Mr. Greenblat, what I wanted to know is why you used that price, rather than the price shown or the amount shown by the price list here, Exhibit 1 for Identification.—A. Well, on that particular price list it was very specifically marked by Mr. Perry, in his own handwriting, that on this particular set of woven straw shopping bags, 102 and 101, that Musalem's price was actually 2.90 per set; that that was his price to us, and that was the invoice price.

The price list was subsequently admitted into evidence as petitioner's exhibit 1. The printed price listed for items 101 and 102 combined is 3.35 pesos.

Correspondence between Bailey-Mora Co. and Samuel S. Perry was admitted into evidence as petitioner's collective exhibit 3, petitioner's exhibit 4, and petitioner's collective exhibit 5. According to this correspondence, Bailey-Mora Co. advised petitioner of new prices given by the appraiser in regard to some of the merchandise involved and asked whether petitioner wished to amend the entry. A later letter indicates the increase in value returned by the appraiser and advises that there was still time to file an appeal for reappraisement. A letter to Bailey-Mora from petitioner instructs it to file such an appeal, but Bailey-Mora advised that it was by then too late.

Mr. Greenblat testified that he stood by the entered values because the invoice reflected the prices actually paid and he had no reason to believe that they were not the market values at the time; that the intended appraised values as to items 8/4 and 102/101 accorded with the printed prices shown on the price list of Salvador Musalem; that he did not change the values to accord with the price list because of the information he had received from Mr. Perry; that he did not believe Mr. Musalem's price list was actual because "we proved it by buying the goods for less than he put on his printed list"; that he had no other means of ascertaining what the market value was for this class of merchandise at the time of exportation and that he had no information as to a different market value than the purchase price in regard to the merchandise shipped by Romero and Quinto. He stated, however:

Well, we could have written down, possibly, at any time, or from every day to every week or every month, to determine if there were any price changes; but as far as we knew, the prices at which the merchandise was invoiced was the proper price that these people would still take additional business on at the time, because this all dates back to 1945, and we know from a number of instances that prices on the invoices were higher than prices at which the orders were placed, because the market had been rising, and in most instances they weren't giving any bargains down there. As far as a running price list schedule from any of the manufacturers, I doubt even if the United States Government had one.

He then stated that the purchase dates were March 13 and 16, 1945; that the consular invoice is dated June 22, 1945; and the entry is dated July 12, 1945.

On cross-examination, Mr. Greenblat stated that he was not in Mexico at the time of exportation of the within merchandise; that he did not make any investigation of prices at that time; that he knew that the price paid for merchandise does not necessarily reflect the dutiable value; that he knew it was an obligation on his part to make an investigation to find out if the prices paid correctly represented the value for dutiable purposes; that he did not instruct Bailey-Mora to request any information from the appraiser at the time of entry.

In remission cases the petitioner has the burden of proving that in making the entry he acted in good faith with no intent to defraud the revenue of the United States or deceive customs officials. *Kachurin Drug Co.* v. *United States*, 26 C. C. P. A. 356, C. A. D. 41. The issue to be determined is the good faith of the entrant, but ignorance of the law or lack of knowledge of the true value of the merchandise cannot be accepted as a reason for remitting the additional duties. *United States* v. *H. S. Dorf & Co.*, 36 C. C. P. A. 29, C. A. D. 392. It has long been held that the petitioner must establish that in undervaluing the goods he was acting in entire good faith; that there were no facts or circumstances known to him which would cause a prudent man to question the values given by him; that he made a full disclosure to customs officials of all material facts in his possession. *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453; *Stan Newcomb and Barbara Todd* v. *United States*, 37 C. C. P. A. 18, C. A. D. 413 (appeal 4617, decided September 30, 1949, rehearing denied, December 12, 1949).

From the evidence herein it appears that Mr. Greenblat was in possession of a price list issued by Salvador Musalem containing prices higher than the entered values, but that he did not use this price list because he found that on the average, the price he paid was *more or less* the market value. He testified, moreover, that Mr. Perry's notation on the price list indicated that the price *to them* was the invoice price and that he did not believe the price list was actual because *he* bought goods for a lower price. Under the circumstances a prudent and reasonable man would make further inquiry as to whether the lower prices were freely offered to all or whether he was getting them because of his superior bargaining ability. There is no evidence that the existence of the price list was disclosed to customs officials by petitioner.

As to the merchandise purchased from other dealers, the witness admitted that no investigation as to market value was made although he knew that prices were rising and he could have written to the dealers to determine if there were any changes. Since the merchandise was purchased in March 1945, and was not imported until July of that year, a prudent man would have made an investigation as to market value in view of the rise in prices.

On the basis of this record we hold that the petitioner has failed to sustain the burden of proof required by the statute. The petition is denied and judgment will be rendered accordingly.