(C. D. 1474)

ISAAC LIAS AND MARY HUTCHINSON *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided November 14, 1952)

*Lawrence, Tuttle & Harper* (*George R. Tuttle* of counsel) for the petitioners.
*Charles J. Wagner*, Acting Assistant Attorney General (*Dorothy C. Bennett, Daniel I. Auster*, and *Samuel D. Spector*, special attorneys), for the respondent.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

EKWALL, Judge: This is a petition for the remission of additional duties accruing under section 489 of the Tariff Act of 1930 due to the undervaluation of merchandise.

The merchandise involved herein consists of two cases containing cotton handkerchiefs, wooden figures, and cotton and linen table-cloths and napkins, imported from Mexico on February 3, 1948, for the account of I. Lias of San Diego, Calif. A *pro forma* invoice states that the seller was O. L. Lias, Shanghai, China, and that the manufacturer was King Hai Co., also of Shanghai, China.

At the trial, the petitioners called two witnesses, Isaac Lias, the importer of the merchandise, and Oscar Sheer, who exported it from Mexico. Respondent called Gordon C. Hodgeson, who had been appraiser of merchandise at San Ysidro at the time the goods were imported, and Ernest S. Glazer, customs agent. The following facts were brought out by their testimony:

Mr. Isaac Lias was born in China and came to this country in 1947 as a student. Some time in that year, his father, Mr. O. L. Lias, shipped to him five cases of merchandise, including the two cases involved herein, from Shanghai, China. Mr. Isaac Lias received the bill of lading and sent it to his cousin, Mr. Oscar Sheer, in Tijuana, Mexico. The merchandise itself was sent in bond to Tijuana. According to the version given by Mr. Isaac Lias and Mr. Sheer, they did not pay for the merchandise, but it was to be sold by Mr. Sheer on a commission basis for the account of Mr. O. L. Lias. Mr. Hodgeson and Mr. Glazer stated, however, that at a conference on February 5, 1948, Mr. Lias said that he had sent $1,000 to his father to purchase Chinese merchandise, which he thought would be salable in the United States, and that they were given to understand that Mr. Isaac Lias and Mr. Sheer were working as partners.

In any event, Mr. Sheer received the merchandise in Tijuana and offered and sold a portion thereof. Subsequently, Mr. Isaac Lias arranged with Mr. Sheer to have two cases of the goods sent to him in San Diego to sell there. Prior to shipment, Mr. Sheer visited the offices of Mary G. Hutchinson, customs broker, and Mr. Hodgeson, appraiser at San Ysidro. He told the broker that the goods originated

in Shanghai and had been in Tijuana several months, and he exhibited the original invoice from Shanghai covering the entire shipment.

On January 30, 1948, Mr. Sheer had a conference with Mr. Hodgeson. He testified that he showed him the Shanghai invoice at that time and told him that he had been selling like goods in Tijuana in both pesos and dollars and that the Tijuana prices were higher than the Shanghai prices. He did not show either the broker or the appraiser any invoices covering sales in Mexico nor tell them the prices at which he had been selling such merchandise, except for quoting a few prices from memory. He stated that he asked the appraiser whether the duty should be paid on the basis of the Shanghai values or the Mexican values and was told to use the valuation on the Chinese invoice. Mr. Hodgeson stated, however, that he told Mr. Sheer that the entered values should be based upon the Mexican prices and not the Chinese.

On February 3, 1948, the merchandise was shipped to this country and entry was made on the basis of the values in the Chinese invoice. A *pro forma* invoice was prepared, apparently by the customs broker's office, from the Chinese invoice and was given to the appraiser. Mr. Sheer testified that at the time he talked with Mr. Hodgeson he did not have any knowledge of the market for like goods in Tijuana at wholesale although he knew that the Tijuana prices were higher than the Shanghai ones. He said he made the entry at the lower value in order to sell the goods more favorably here. No submission sheet was filed and Mr. Sheer did not ask the appraiser if he had any information as to the value of this merchandise in Mexico. He told the broker and the appraiser that the only information he had as to the value of the merchandise was that contained in the Chinese invoice.

On February 5, 1948, a conference was held in Mr. Hodgeson's office at which Mr. Hodgeson, Mr. Lias, Mr. Sheer, Mr. Glazer, and Mr. Comacho, attorney in fact for Mary G. Hutchinson, customs broker, were present. Apparently, Mr. Sheer and Mr. Lias were supposed to bring bills or invoices, but, as they did not do so, there was just a conversation about prices and the Chinese invoice was again exhibited.

The Chinese invoice was not produced at the trial but a copy thereof was received into evidence as respondent's exhibit A. Mr. Hodgeson testified that the item numbers on the *pro forma* invoice herein corresponded to items on the Chinese invoice, except as to some handkerchiefs which were not listed on the latter.

Subsequently, Mr. Hodgeson and Mr. Glazer made an investigation as to the prices at which like merchandise was sold in Mexico, as a result of which the appraised values were increased by more than 100 per centum.

An appeal for reappraisement was filed but was subsequently abandoned. In response to examination by his attorney, Mr. Lias testified:

R Q. Did you talk with me about that reappraisement appeal?—A. I did, come to think of it.

R Q. And following that was it when you abandoned it?—A. That is right.

R Q. What did I tell you about the question of value, as to which was the correct value, the Mexican or the Shanghai value? What did I say to you?—A. The Mexican.

It is claimed that the petitioners herein are entitled to a remission of the additional duties assessed under section 489 of the Tariff Act of 1930 on the grounds that the appraiser should not have considered Mexico the country of exportation and appraised the merchandise on the basis of sales made in Tijuana; that "the petitioner was fully justified in not taking the Tijuana prices as his value for entry purposes"; and that the petitioners placed before the appraiser all pertinent information in regard to the shipment.

The correctness of the appraised value is not now in issue. That question could have been litigated in the appeal for reappraisement, but that was abandoned, apparently because counsel then considered the correct values to be the Mexican values.

The question before us is whether or not the petitioners have met the burden of proving that in making entry such good faith was exercised as is required by the statute. *Kachurin Drug Co.* v. *United States*, 26 C. C. P. A. (Customs) 356, C. A. D. 41. Where, as here, the appraised value exceeds the entered value by more than 100 per centum, the entry is presumptively fraudulent and a heavy burden rests upon the petitioners to show by satisfactory evidence that entry was made without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. *United States* v. *Aug. F. Stauff & Co.*, 25 C. C. P. A. (Customs) 215, T. D. 49306. The entrant of merchandise has a duty to inform himself as to the correctness of his representations as to the value of the merchandise; a showing of indifference to its proper value does not meet the requirement of satisfactory proof under the statute. *R. W. Gresham* v. *United States*, 27 C. C. P. A. (Customs) 106, C. A. D. 70. Ignorance of the law or lack of knowledge of the true value of the merchandise cannot of itself be accepted as a reason for the remission of additional duties. *United States* v. *H. S. Dorf & Co. of Pa., Inc.*, 36 C. C. P. A. (Customs) 29, C. A. D. 392.

In the instant case, it appears that the petitioners through Mr. Sheer advised the appraiser that the merchandise had originated in China and that like merchandise was being sold in Tijuana and the original Chinese invoice was exhibited to him. Mr. Sheer told the

appraiser that the Mexican prices were higher than the Shanghai ones and quoted a few prices from memory, but he did not give him any invoices covering sales in Mexico. Whether or not the sales by Mr. Sheer were at the prices at which such or similar merchandise was freely offered for sale to all purchasers in Mexico for home consumption or for exportation to the United States does not appear.

Mr. Sheer did not ask the appraiser if he had any information as to the value of the merchandise in Mexico and no submission sheet was filed. The evidence is conflicting as to the basis upon which the appraiser advised Mr. Sheer to make entry. Such information, of course, does not relieve the entrant of the duty imposed upon him to ascertain and enter the merchandise at its true value. *United States* v. *H. S. Dorf & Co. of Pa., Inc., supra.* Moreover, Mr. Sheer testified that entry was made on the basis of the Chinese invoice values in order to sell the merchandise more favorably in this country. He knew that the merchandise had been in Mexico and that he had offered it for sale there. There is no evidence in the record that Tijuana is a free port, as claimed in petitioners' brief, or that the merchandise had not entered the commerce of Mexico. Disclosure of facts to the appraiser is not sufficient in this situation; petitioners must also establish that there were no facts or circumstances known to them which would cause a prudent and reasonable person to question the correctness of the values given by him. *Wolf & Co.* v. *United States,* 13 Ct. Cust. Appls. 589, T. D. 41453. Since merchandise must be appraised at its value in the principal markets of the country of exportation where it has entered the commerce of that country (*Maier, Morton & Browne* v. *United States,* 11 Ct. Cust. Appls. 115, T. D. 38753; *D. & B. Import Corp.* v. *United States,* 29 C. C. P. A. (Customs) 65, C. A. D. 172), and since the entrant knew that the merchandise herein had entered the commerce of Mexico, entry at the Chinese invoice values is not consonant with the good faith required by the statute for a remission of additional duties.

Even assuming that China was the country of exportation, there is no evidence that the values given in the Chinese invoice were the prices at which the merchandise was freely offered for sale to all purchasers for home consumption or for exportation to the United States. There is nothing to show that anyone representing the petitioners at any time made any effort to ascertain the prices at which this merchandise was offered or sold in the Chinese market.

It is evident that entry was made on the basis of the Chinese invoice values regardless of circumstances which would have made a prudent man question the correctness of such values. We conclude that the petitioners have not sustained the burden of proving by satisfactory evidence that entry was made at a less value than that returned upon final appraisement without any intention to defraud the revenue of the

United States or to conceal or misrepresent the facts or to deceive the appraiser as to the value of the merchandise.

The petition is denied and judgment will be rendered for the respondent.